Good morning, Your Honors. Audrey Imbara on behalf of the defendant appellant who requests that this court remand for resentencing his case to be sentenced without an adjustment for obstruction of justice. This case presents the issue of whether a defendant can be sentenced, his sentence can be increased for obstruction of justice based on the statement made by his counsel in opening statement in a court trial. This case presents the issue of whether a defendant can be sentenced, his sentence can be increased for obstruction of justice based on the statement made by his counsel in opening statement in a court trial. whether he can be sentenced, his sentence can be increased for obstruction of justice based on the statement made by his counsel in opening statement in a court trial. And when he was initially arraigned, because he did say his true name then, that his name was his alias. But he could have been confused because there is no evidence in the record whether or how he had been advised prior to making those statements. In addition, the district court in finding obstruction of justice never referred to or relied on those statements. It is just not addressed in its finding of facts. So when you find obstruction of justice and you need to find the factual basis for it, you have to find that it was willfully done. And here we don't know why it was done. Getting back to the point. Can you think of a reason why he would have answered with two different names without knowing the difference? Your Honor, it could be because that had been the name that he had been living under since he had returned to the United States. I don't know, and it's not on the record. What is in the record is once the defense attorney in his opening statement, which was very short, it was only one page, in the court trial said that my client's name is Carlos Javier Amaral-Vazquez and that he was born in Puerto Rico, which, by the way, the defendant has never said in this case, and he will testify to that and will put on evidence to that. It seems that the defendant disavowed that statement by not testifying, not putting on evidence, and basically resting on the burden of proof in the prosecution's state of the evidence. And by the time closing argument came around, the defense attorney had retracted its position and, again, relied on the burden of proof and the prosecution's evidence. So the government's position is that there are two arguments for why the separate and independent, why the adjustment should not apply, and the first is that it's a violation of the guidelines, because the guidelines require conduct. And here everyone agreed, including the government at the time of sentencing, that there was no conduct actually done by the defendant which obstructed justice and was done for the purpose of impeding justice. Why doesn't the conduct include his admissions as to the alternative name, both on June 6th at the arraignment and June 15th at the guilty change of plea hearing? Because, Your Honor, respectfully, there was never any finding made with respect to that conduct. There was never any the court didn't discuss it, the government didn't suggest it, the defense didn't believe that it amounted to obstruction of justice. And so all the cases cited by the government, there is, even if the government finds on an alternative basis to support an adjustment. But wasn't that fact noted in the pre-sentence report, the earlier admissions of the wrong name? I think that, and I have to see. Because the probation officer recommended the enhancement for obstruction of justice, correct? Yes, but I believe that the obstruction of justice was recommended primarily because at some point the defense attorney had given a birth certificate to the government as discovery. It was never offered at trial. And at the sentencing, the defense attorney said, my client had nothing to do with the birth certificate, and obviously everybody agrees that it was the defense attorney who gave it to the government. And so the court struck that sentence in the probation report. And I believe that that was principally the reason why probation recommended. Did the court make any specific finding about the defendant obtaining the false identity and using it? Yes, Your Honor. The court did discuss the identity fraud that the defendant may have committed prior to being arrested. But that, Your Honor, is, I believe, another case. The defendant may be guilty of identity theft, and that may be another charge, and that may be another trial. But that's not the issue here with respect to obstruction, because obstruction goes to what the defendant did with respect to the court. It's already been agreed upon by, I believe, the government and the defense, and I believe the court, that there was no, nothing that the defendant did to hinder investigation or prosecution. So the only issue is whether he did something willful, willfully obstructive justice towards the court. He said something to impede the court. And now we're back down to the comments that he made in between his initial admission of his true name and his trial. And I submit to Your Honor that there is no finding, there's no finding by the trial court at all with respect to those statements, and specifically there's no finding with respect to willfulness. And the obstruction adjustment adjustment was not based on that. So it was based on specifically the statements made by the defense attorney in the very short opening statement. To be more specific, the court said the defendant either induced the making of the statements or stood by silently while they were done during the course of his trial. I didn't think that is a problem, because obviously standing by silently is not conduct. So that wouldn't seem like it would qualify under the guidelines. And more importantly, it would seem to violate the Fifth Amendment. And that's the two arguments that I'm here today to present. But unless Your Honors have any specific questions, I'd like to save. Sorry. Can you distinguish the Alito-Calazzo case? The facts seem very similar in that case. Yes, Your Honor. I think that they are similar. I think that they're distinguishable in two respects. The first is that the Fifth Amendment issue was never raised. It was never put before the Court. And that's a novel issue in this case. And the second is simply that it's just unpublished and not precedent. And thank you. I'd like to present the rest of my time. You may. Good morning, Your Honors. May it please the Court. Christina Shea, United States. A brief background on how this issue came before the district court may be helpful at the outset. The PSR in this case based the obstruction enhancement, its recommendation of an obstruction enhancement, on, one, defendants supplying the false vertificate, and, two, defendants not supplying the false vertificate. In this case, the obstruction enhancement applies and can be affirmed because  and, two, he claimed that the obstruction enhancement was not founded based on those two things. On appeal, the government is still not defending the obstruction enhancement based either on the birth certificate or on direct trial testimony. In this case, the obstruction enhancement applies and can be affirmed because the defendant personally repeatedly lied to the courts below about his identity, and, two, he caused his counsel to base the defense at trial on this false identity. This Court may affirm on any basis in the record, including that defendant personally lied to the court, the district court. He did so on at least four separate occasions. The defendant initially wanted to plead guilty in this illegal reentry case. He made his initial appearance under his true name and signed the plea agreement under his true name. At some point in June of 2011, he changed his mind about pleading guilty, and he started referring to himself as Carlos Javier Amaral Vazquez, the victim of his identity fraud. Vazquez is a Puerto Rican and, therefore, an American citizen, and thus could not be held liable for illegal reentry. On June 6, 2011, at his arraignment, the defendant told the magistrate judge he was Vazquez. On June 6, 2011, on a waiver of indictment form that he had previously signed as Guillen, his true name, he signs over it with this false identity and actually writes T.N. true name with this false identity. He interlineates it on the form. Then on June 11, 2011, the defendant appears before the district court and tells the district court judge that his true name is Vazquez when he entered a not-guilty plea. The defendant also submitted a waiver of trial by jury form filed with the district court as in this false identity of Vazquez. The defendant notably did not proceed as John Doe. He chose to tell the magistrate court and the district court judge that he was Vazquez. Thus, contrary to defendant's central argument, that he was penalized for remaining silent, he gave up that right when he affirmatively made these misrepresentations to the district court. I suppose the Court did make reference to him stand, I think the phrase, the defendant stood silently. Yes, Your Honor. He did make reference to that, but he says it as an or. He misrepresented his identity. He induced his counsel to make these misrepresentations or he stood silently. Either of those would be sufficient. And the reason why standing by silently in this case is not the case of Reyes is because defendant puts the ball in motion and then stands silently as that defense ball is rolling down the hill. As the district court found, this name, Carlos Javier Amaral Vazquez, is not a name out of thin air. It's a real person. The defendant actually incurred significant debts under this false identity. He knows he's a real person. In addition, the district court adopts the findings in the PSR with the exception of the birth certificate finding. And those findings include, in an effort to avoid responsibility for the incident offense, defendant assumed the identity of the victim, Carlos Javier Amaral Vazquez, a native of Puerto Rico. And those are specific findings under which this Court may affirm. In addition, opposing counsel claims that these repeated misrepresentations to the courts below were not willfully done or may not have been willfully done. The government would submit the timing shows very clearly that it's because he changed his mind about pleading guilty. And that is also reflected in the statement in the PSR that the district court the finding of which the district court expressly adopts. The district court also found that identity itself is central to this case. And, in fact, this case is docketed as United States and before this Court as United States v. Vazquez, the name of an innocent man who is the victim of defendant's identity theft. And the ---- I've wondered what our caption should be at this point. Has there been any formal amendment? No, Your Honor. The government is in the process of filing a motion with the district court to change that caption. And, again, this Court may affirm on any basis in the record which would include these four active misrepresentations. These misrepresentations are obviously material. As they affect the docket, an innocent man's name, again, is the name of the defendant in this case. In addition, defendant also induced his counsel to lie to the district court. And this is a specific finding made by the district court at 7-1-1. In addition, the district court found that the defendant was not the moving force behind this false defense at trial. The district court found that defense counsel's misrepresentations that his client was Vazquez were caused by the defendant. This is not clearly erroneous. In fact, there's extensive evidence in the record. And this is what distinguishes this case from Reyes. In Reyes, there's an ex parte under seal affidavit of a co-defendant that was procured by defense counsel and submitted. In this case, in contrast, defendant previously stole the identity of Vazquez. He stole the Vazquez name in its entirety and presented that to the district court, and that was the part of his – that was his defense. How do we know that he induced counsel to search for the birth certificate and to argue that at court? I mean, we know that he provided that name and he admitted to that name in prior court proceedings. How does that prove inducement? Your Honor, the government is not submitting – does not believe, and has represented the district court, that defendant did not personally procure that birth certificate. And he could not have because he was in custody at that time. The government would submit that the evidence – the record reflects the inducement on the part of defendant, as the district court found, because this name – and the district court noted this – is a unique name, Carlos Javier Amaral Vazquez, who happens to be a citizen of Puerto Rico and who happens to be a real person. These things defendant knew because he had previously stolen the identity of Vazquez and he was able to obtain money under the Vazquez name. So he steals the identity of this real person and then presents this real – then he's this real Vazquez person, and then his lawyer makes that same representation at trial, and that ball keeps on rolling. So he doesn't have to do anything additional, affirmative, in instructing his lawyer or something like that in order to induce the lawyer to make that argument? The government submits that that – the evidence is sufficient to support the district court's finding that defendant caused this defense, this false defense. And that – The language is willfully – willfully caused. Yes, willfully caused. In the application note 9, defendant is – of this guideline, defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, or procured, or willfully caused. And in Olmedo, which is an unpublished case, when he willfully stands silently by, that's also sufficient in this case. Finally, the district court also found that defendant stood silent as defendant – defense counsel made the misrepresentations that defendant caused. However, because defendant induced those arguments, the government would submit that the Fifth Amendment doesn't apply here. And there's a difference between Mitchell, the case the defendant relies on, where the district court had to make a finding and found for the government because the defendant remained silent, and the district court in that case specifically said, I find this because the defendant – in part because the defendant has remained silent. I'm sorry. Which case is that? The Mitchell case in the first Supreme Court, Your Honor. And Romero-Rendon, which this Court considered after Mitchell and applied – and in the footnote addressed the Mitchell issue. And in Romero-Rendon, the holding was that there's sufficient evidence for the government to meet its burden because the defendant didn't put anything on the other side of the scale. And Romero-Rendon is particularly applicable in this case because Romero-Rendon has an uncontroverted PSR alone. There's no additional evidence beyond the uncontroverted PSR that's used to support the sentencing enhancement in that case. And in that case, this Court found that that was sufficient to establish by clear and convincing evidence a defendant's prior conviction, prior aggregated felony. In this case, the obstruction enhancement is two levels as opposed to a significant increase. And this Court has found in many cases that an uncontroverted PSR would be sufficient to show preponderance. But in any event, Romero-Rendon would show that the uncontroverted PSR is sufficient to establish clear and convincing evidence. And as the Court stated in Romero-Rendon, to hold that Mitchell dictates otherwise under the Fifth Amendment would be to allow the defendant's mutinous effectively to rebut the government's evidence, which this Court should not hold. I see that my time is almost up. Unless the Court has any further questions, the government respectfully submits its briefs and requests the defendant's sentence be affirmed. Thank you. Ms. Ybarra. Thank you, Your Honors. Judge Clifton, I think you keyed on the important issue in the case, which is that the Court, in making its findings, said or, and it was disjunctive and not conjunctive, so it did not necessarily find that there wasn't any inducement. It could have been enough that in the Court's opinion, in the trial court's opinion, that the defendant sat there silently. And I think that's the problem here. So. Could we affirm on an alternative ground? I mean, you heard arguments earlier today in immigration cases, and those cases were clearly limited to the reasoning given by the agency. Is that the case here? Yes, Your Honor, could affirm on a different legal ground, but you would have to base it on the factual findings in the record. And in this case, there were not the factual findings which the government would like you to adopt. What factual findings do we need? I mean, there's no dispute as to whether he stood up in front of court and said on more than one occasion that his name was something other than what his name turned out to be. Correct, Your Honor, but the issue is willfulness. And I think it speaks volumes that the Court didn't mention it, because maybe it didn't find it significant enough to mention, because maybe that wasn't the thing that ticked  It doesn't, it's not clear that it was. I mean, I guess I'm being baffled. How could he not know what his name was? He'd been using multiple aliases for some time. The pre-sentencing report has a long list of aliases he'd used. Are you suggesting that he didn't really know what his name was when he spoke to the court? No, Your Honor. I'm suggesting that he didn't necessarily do it to impede the process. In this case, he gave his true name at first. And then when he, after he gave his alias, when it was mentioned in opening statement and it was said that he would testify that that was his name and that he would additionally testify that he was of Puerto Rican descent, which, by the way, no one ever said, that he had never said before in the court proceedings, he didn't testify. He didn't offer any evidence to that effect. He just sat back. Well, there's a real easy explanation for why he didn't, which is that he was about to get shot down pretty bad since they brought the real Carlos there to testify with his mother. I mean, that, I can understand, it's real easy for me to understand the decision, oh, I guess I'm not going to push this defense onto the table now. Yes, Your Honor. I understand that, that, I understand that that is, that would be obviously persuasive in not, in not testifying. But also, he wanted to suggest that he could have just given his alias from the get-go and he didn't. So it is not clear that it was willfully done to impede justice. And I think that's significant. I think that's significant. What other purpose would it have been for? Because that has been the name. And for purposes of this hearing, we don't disagree. That had been the name that he had been living under since he had come back into the United States. And so perhaps he thought that that's how they could track him. The record doesn't speak to what his purpose is. But he had already changed back to his real name in the earlier proceeding. Yes. And maybe he went, that's correct. And that's why I'm saying it's unclear what his purpose is. He had given his true name, but maybe he thought, well, I've been living here under this name, I should give that name. Your Honors, I believe Reyes is on point. And I'll leave you with this comment that I think the issue is whether the defendant wanted his attorney to make that opening statement. And the fact that he didn't follow up by testifying and the fact that he didn't follow up by putting on evidence shows that he disavowed that statement. We thank you and both counsel for your helpful arguments. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton